Below is an opinion of the court.

_Teresa H. Pearson_
TERESA H. PEARSON
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| In re | Case No. 20-30704-thp11 |
|---|---|
| JASON MATTHEW BRONSON, | MEMORANDUM DECISION DENYING DEBTOR'S MOTION FOR SUMMARY JUDGMENT |
| Debtor(s). | |

This matter came before the court on the motion for summary judgment or partial summary judgment filed by debtor Jason Matthew Bronson ("Debtor"). Debtor seeks to hold Oregon Division of Child Support ("DCS") in contempt for violation of the automatic stay of 11 U.S.C. §362(a) and for failure to comply with the terms of the court's order confirming Debtor's chapter 11 plan. Debtor asserts that DCS acted inappropriately when it intercepted a $1,200 stimulus payment that was issued under the CARES Act, sent statements to Debtor post-petition, and caused Debtor's passport to be withheld. In response, DCS asserts that its actions attempting to collect unpaid child support from Debtor did not violate either the automatic stay or the order confirming Debtor's plan. For the reasons set forth below, Debtor's motion for summary judgment is denied.[1]

---

[1] This disposition is specific to this case. It may be cited for whatever persuasive value it may have.

Page 1 of 13 -   MEMORANDUM DECISION DENYING DEBTOR'S MOTION FOR SUMMARY JUDGMENT

## Factual Background

### A. Undisputed Facts

The material facts are undisputed.

Debtor filed chapter 11 under subchapter V on February 27, 2020. At the time of filing, he had an obligation to pay on-going child support of $550 per month for one child. Debtor also listed DCS and the Oregon Department of Justice on his bankruptcy schedules as holding a pre-petition child support claim of $10,130.

DCS received notice of the bankruptcy in March 2020. After the petition was filed, DCS continued to send monthly statements for child support to the Debtor.

Marilyn Drinkward is the child's mother. Ms. Drinkward filed a proof of claim asserting, among other claims, a claim for the pre-petition past-due child support of $11,226.

Under the CARES Act, a stimulus payment of $1,200 was owed on account of Debtor. On May 2, 2020, DCS intercepted this payment, and applied it to the child support Debtor owed. After application of the stimulus payment to the debt, Ms. Drinkward amended her proof of claim to reduce the pre-petition past due child support to $10,026.

Debtor filed his Plan of Reorganization dated May 27, 2020 (the "Plan"). With respect to the Debtor's child support obligations, the Plan provided as follows:

> 2. Priority Domestic Support Obligations. **Each holder of a Domestic Support Obligation shall receive normal monthly payments as outlined in the associated support order.** The Domestic Support Obligation Holder will receive full repayment of all outstanding child support arrears prior to the beginning of payments to the unsecured claimants.

(Emphasis added).

After the Plan was filed, Debtor and Ms. Drinkward entered into a Settlement Agreement and Global Release (the "Settlement Agreement"). The Settlement Agreement was dated August 12, 2020, a date also described in the document as the "Effective Date" of the Settlement Agreement. The Settlement Agreement provided for Debtor to take all necessary

steps to support the adoption of the child by Ms. Drinkward's family member. The Settlement Agreement also contained the following release language:

> 3.2 Except as otherwise provided herein, Drinkward, for herself individually and on behalf of her present and former agents, representatives, heirs, successors, and assigns hereby fully and forever releases and discharges Bronson and his entities from any and all claims, counterclaims, actions, causes of action, suits, setoffs, costs, losses, expenses, sums of money, accounts, reckonings, debts, charges, complaints, controversies, disputes, damages, judgments, executions, promises, omissions, duties, agreements, rights, demands, obligations and liabilities, of whatever kind or character, direct or indirect, express or implied, liquidated or unliquidated, fixed or contingent, whether known or unknown, or capable of being known **from the beginning of time up to and including the Effective Date of this Agreement**, including any claim under any legal theory that Drinkward ever had, now has, or hereafter can, shall, or may have.

(Emphasis added). DCS received a copy of the Settlement Agreement. The Settlement Agreement contained an integration clause, stating it was the entire agreement between the parties.

Debtor's Plan was confirmed on September 15, 2020. The Plan was confirmed pursuant to 11 U.S.C. §1191(b). The order confirming the Plan provided:

> 4) The Debtor shall contribute the funds previously earmarked for payment to Drinkward's priority claim, in the amount of $11,226, to the general unsecured creditors in Class 2.

The order confirming the Plan did not otherwise amend the Plan regarding the treatment of Debtor's child support obligations. The Plan also provided that all property, except property required to perform obligations under the Plan, would revest in the Reorganized Debtor. The Plan became effective on October 15, 2020, which was thirty days after the court entered the order confirming the Plan. DCS received a copy of the order confirming the Plan.

The adoption of the child by Ms. Drinkward's family member was completed on January 28, 2021. As a result of the adoption, Debtor's legal duty to pay ongoing monthly child support ceased on and after January 28, 2021.

The monthly statements for child support DCS sent to the Debtor dated February 1, 2021, September 3, 2021, and February 4, 2022, each said that the "minimum

Page 3 of 13 -    MEMORANDUM DECISION DENYING DEBTOR'S MOTION FOR
                          SUMMARY JUDGMENT

Case 20-30704-thp11    Doc 188    Filed 08/23/22

payment due now" was $660 and contained a statement of total arrears of more than $2,750.² Of that $660, $450 was for current child support, $100 was for current cash medical, and $110 was an "amount to pay on arrears." These monthly statements also each contained a statement that "If you have a written agreement to pay a different amount, it is not reflected above."

Debtor's passport has been withheld by the State Department of the United States due to unpaid child support. The only evidence submitted with this motion regarding the hold on Debtor's passport is Debtor's declaration as follows:

> 10. I subsequently learned that Division, despite being instructed to cease collecting the Support, had continued to advise the State Department of the United States that I should have my passport withheld due to unpaid support. This caused me to lose my passport renewal fees, be unable to take a scheduled trip, and lose the ability to work on contracts, I had already passed on due to the vacation, once I was unable to take my vacation. To my knowledge, the Division continues to prevent me from renewing my passport to this day, despite the fact that I do not owe any support to Drinkward and Drinkward has filed full satisfactions with the Division and I have received a discharge.

It is unclear from this statement exactly what acts DCS took regarding the passport and exactly when it undertook those acts.

**B.      Reasonable Factual Conclusions**

From these undisputed facts, viewed in the light most favorable to the non-moving party, certain factual conclusions can reasonably be drawn.

First, a finder of fact could reasonably find that Debtor owed five monthly payments for child support that arose between August 13, 2020, and January 28, 2021. Under the Settlement Agreement, all child support obligations of the Debtor that accrued on or before August 12, 2020, were released. The Settlement Agreement was silent regarding treatment of monthly child support obligations accruing on and after August 13, 2020. However, the Plan required Debtor to pay normal monthly child support payments, which would include normal

---

² These three monthly statements were the only statements that Debtor provided with his motion for summary judgment.

monthly child support amounts accruing between August 13, 2020, and January 28, 2021. Those amounts were the following:

>September 1, 2020: $550
>October 1, 2020: $550
>November 1, 2020: $550
>December 1, 2020: $550
>January 1, 2021: $550
>Total $2,750

After the child's adoption was complete on January 28, 2021, Debtor was no longer legally obligated to pay ongoing monthly child support. Thus, pursuant to the terms of the Settlement Agreement and the Plan, as of the date the child's adoption was complete, Debtor owed unpaid child support for five payments of $550 each, for a total of $2,750.

Second, a finder of fact could reasonably find that DCS did not use the statements to try to collect more than DCS was entitled to collect. DCS did not demand payment of more than $2,750 after the Plan was confirmed. The DCS statements dated February 1, 2021, September 3, 2021, and February 4, 2022, each demanded payment of $660, which was less than the total amount due as of those dates. Although these statements included a statement of total arrears that was incorrect and too high, a reasonable finder of fact could conclude that DCS was not trying to collect this entire amount of arrears. DCS included language on the statements that "If you have a written agreement to pay a different amount, it is not reflected above." A finder of fact could reasonably conclude that DCS acknowledged the existence of the Settlement Agreement as a "written agreement to pay a different amount" that would reduce the amount of arrearage actually due.

## Issues Presented

1. Did DCS violate the automatic stay when it intercepted the $1,200 stimulus payment that was issued under the CARES Act?

2. Did DCS violate the automatic stay and the order confirming the Plan by sending monthly statements to Debtor seeking payment of unpaid child support?

3. Did DCS violate the automatic stay and the order confirming the Plan by causing Debtor's passport to be withheld due to unpaid child support?

## Discussion and Analysis

**A. Applicable Law Regarding the Automatic Stay**

The automatic stay generally prohibits any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the bankruptcy case. 11 U.S.C. §362(a)(6). There are exceptions to this rule for collection of domestic support obligations, including child support. Specifically, the filing of a bankruptcy case does not stay "the collection of a domestic support obligation from property that is not property of the estate." 11 U.S.C. §362(b)(2)(B). The filing of a bankruptcy case also does not stay "the interception of a tax refund, as specified in sections 464 and 466(a)(3) of the Social Security Act or under an analogous State law." 11 U.S.C. §362(b)(2)(F).

**B. Applicable Law Regarding Contempt for Violation of Plan Terms.**

A violation of an order confirming a chapter 11 plan is an act of contempt, which may be remedied by the court's authority under 11 U.S.C. § 105(a). Section 105(a) authorizes the court to issue any order, process, or judgment necessary or appropriate to carry out the provisions of the Bankruptcy Code, which includes enforcement of the bankruptcy court's own orders through the imposition of sanctions of civil contempt. *Hansbrough v. Birdsell (In re Hercules Enterprises, Inc.)*, 387 F.3d 1024, 1027-28 (9th Cir. 2004).

To establish a basis for civil contempt, the moving party has the burden to show by clear and convincing evidence that the alleged contemnor has violated a specific and definite order of the court. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1190-1191 (9th Cir. 2003). There must also be no fair ground of doubt as to whether the order confirming plan barred the creditor's conduct. The United States Supreme Court has held that a bankruptcy court may hold a creditor in civil contempt for violating a discharge order only if there is no fair ground of doubt as to whether the order barred the creditor's conduct. *Taggart v. Lorenzen*, ___ U.S. ___, 139 S.Ct. 1795, 1799 (2019). Although the Court in *Taggart* reached this holding in the context

of a creditor's attempt to collect a discharged debt in a chapter 7 bankruptcy case, the rationale in *Taggart* expands beyond cases involving a chapter 7 discharge. The Court recognized that the "fair ground of doubt" standard applied in civil contempt matters in different contexts. *Taggart*, 139 S.Ct. at 1801-02. The "fair ground of doubt" standard in *Taggart* should also apply in cases involving contempt of a chapter 11 confirmation order. *Beckhart v. NewRez LLC*, 31 F.4th 274, 277 (4th Cir. 2022).

C. **Legal Conclusions Regarding Interception of $1,200 Stimulus Payment**

Debtor asserts that he was owed a stimulus payment under the CARES Act, and that DCS intercepted that payment. The CARES Act payment was a refundable tax credit. CARES Act, H.R. 748, Pub. L. No. 116-136, §2201, 134 Stat. 281, 335-340 (Mar. 27, 2020), codified at 26 U.S.C. §6428. The CARES Act provided that "In the case of an eligible individual, there shall be allowed as a credit against the tax imposed by subtitle A" (i.e., income taxes) an amount equal to $1,200 for an individual. 26 U.S.C. §6428(a). The CARES Act said that amount "shall be treated as allowed by subpart C of part IV of subchapter A of chapter 1" (i.e., as a refundable credit).

The stimulus payment at issue can appropriately be treated as a tax refund. "Tax refunds come from two sources. First, they can result from over-withholding of payroll tax. Second, they can result from tax credits such as the Earned Income Credit (EIC), Child Tax Credit (CTC), or other tax credits that are available to low-income workers and result in tax refunds." *In re Orozco*, 613 B.R. 23, 30 (Bankr. D. Or. 2020).

The automatic stay does not prohibit DCS from collecting from tax refunds, regardless of whether those refunds are estate property. 11 U.S.C. §362(b)(2)(F); *In re Dougherty-Kelsay*, 601 B.R. 426, 444 (Bankr. E.D. Ky. 2019) (noting that, "[u]nlike other stay exceptions, §362(b)(2)(F) does not limit its applicability to non-estate property.").

The automatic stay did not prohibit DCS from collecting child support owed by Debtor from the stimulus payment because the stimulus payment was a refundable tax credit.

Therefore, the court must deny the Debtor's motion for summary judgment on liability for DCS's interception of the stimulus payment.

**D.      Legal Conclusions Regarding Statements Sent to Debtor Post-Petition**

The analysis of whether DCS violated the automatic stay or the order confirming the Plan differs depending on when the statements were sent. The court addresses statements sent at different times below.

### *1.  Statements Sent Post-Petition, Preconfirmation.*

#### *a.  Alleged Violations of the Automatic Stay.*

DCS did not violate the automatic stay when it sent statements to Debtor after he filed his petition and before he confirmed his Plan. These statements did not violate the automatic stay because DCS was entitled at that time to collect child support from assets that were not property of the estate. There is nothing in the statements to indicate they were directed toward collection from property of the estate. Viewing the evidence by drawing all inferences in favor of the non-moving party, a finder of fact could conclude that DCS's statements were an attempt to collect past due child support only from non-estate property.

Although some of Debtor's property was property of the estate, it was possible for the Debtor to have some assets and earnings that were not property of the estate. It was reasonable for DCS to believe that the Debtor would have some non-estate property. For example, property that a debtor exempts is excluded from property of the estate. *Schwab v. Reilly*, 560 U.S. 770, 774, 130 S.Ct. 2652, 2657 (2010).

In addition, in a subchapter V case, assets acquired post-petition and earnings from services performed by the debtor post-petition are not property of the estate unless and until a plan is confirmed under 11 U.S.C. §1191(b). 11 U.S.C. §1186(a). The court acknowledges that section 1186(a) creates uncertainty about the status of a debtor's assets acquired post-petition and debtor's post-petition earnings until after the plan is confirmed. In section 1186(a), Congress did not specify *when* a debtor's assets acquired post-petition and post-petition earnings would become property of the estate—either upon confirmation of the plan, or retroactively back

to the petition date after confirmation. At the time a debtor's case is filed, there is no way to know with certainty whether a plan will be confirmed under section 1191(b). Some debtors will confirm plans under section 1191(b), but others will confirm plans under section 1191(a), or their bankruptcy cases will be converted or dismissed. The time from case filing to plan confirmation or other ultimate disposition of the case usually takes months, at best, and many times will take longer. During this interim period, neither the court nor interested parties know whether a subchapter V debtor's assets acquired post-petition and post-petition earnings are going to be property of the estate or not. Interested parties should be able to know with clarity, at any given time, whether an asset or specific earnings are property of the estate or not. Thus, in this court's view, the better rule is that subchapter V debtor's assets acquired post-petition and post-petition earnings should not be treated as property of the estate unless and until the debtor confirms a plan under 1191(b). [3]

### b. Alleged Violations of the Order Confirming Plan.

DCS could not violate the order confirming the Plan by sending statements prior to confirmation of the Plan, because the order did not exist at that time.

---

[3] Even if section 1186(a) could be interpreted to require that Debtor's assets acquired post-petition and post-petition earnings be treated as property of the estate retroactively back to the petition date upon confirmation of his plan under section 1191(b), there would be no basis to treat a pre-confirmation collection action by DCS from those assets as a violation of the automatic stay. The lack of clarity under section 1186(a) as to whether Debtor's assets acquired post-petition and post-petition earnings are property of the estate or not prior to confirmation provides a "fair ground of doubt" that would preclude a determination that DCS violated the automatic stay when attempting to collect from those assets before confirmation. *Taggart*, 139 S. Ct. at 1799; *In re Moo Jeong*, 2020 WL 1277575, *4 (9th Cir. BAP 2020) (applying *Taggart's* "fair ground of doubt" standard to motions for contempt for violation of the automatic stay); 10 Collier on Bankruptcy ¶ 9020.01 (Richard Levin & Henry J. Sommers, eds.,16th ed.) ("It is apparent that the Court's decision is not confined to the discharge injunction but will extend, for example, to conduct violating the automatic stay of section 362(a).").

### 2. Statements Sent Post-Confirmation.

#### a. Alleged Violations of the Automatic Stay.

DCS did not violate the automatic stay when it sent statements to Debtor after he confirmed his Plan. Property of the estate, other than property required to perform obligations under the Plan, revested in the Debtor upon confirmation of his Plan, and the automatic stay no longer applied to that property. Viewing the evidence in the light most favorable to the non-moving party, a reasonable finder of fact could conclude that DCS intended to collect the post-August 12, 2020, monthly amounts due only from this non-estate property after the Plan was confirmed. There is nothing in the statements to indicate that DCS was directing them toward collection from any property remaining in the estate.

#### b. Alleged Violations of the Order Confirming Plan.

DCS also did not violate the terms of the order confirming the Plan when it sent statements post-confirmation. Viewing the evidence by drawing all inferences in the favor of the non-moving party, the statements DCS sent post-confirmation did not demand payment of more than the monthly child support that was expressly due and required to be paid under the Plan. The Plan provided that the Debtor would make normal monthly child support payments pursuant to the support order. The order confirming the Plan did not change that. Pursuant to the Plan, and taking into account the terms of the Settlement Agreement and the legal implications of the child's adoption, DCS was entitled to collect the monthly child support payments that accrued between August 13, 2020, and January 28, 2021. The only statements Debtor provided in evidence were statements dated February 1, 2021, September 3, 2021, and February 4, 2022. Each of those statements said the "minimum payment due now" was $660. As of the date each of those statements was sent, DCS was entitled to collect $2,750 in child support. Thus, those statements did not attempt to collect an amount more than Debtor was obligated to pay under the Plan and did not violate the order confirming the Plan.

The fact that the post-confirmation statements included incorrect information about the amount of the arrearage does not change this conclusion. Although each statement

included with Debtor's motion for summary judgment mentions a large arrearage amount, none of the statements demand payment of that full arrearage amount. Instead, each demanded payment of only $660. These statements plainly indicate that it was possible a different amount would be due—each statement contains a disclaimer that the terms of written agreements to pay different amounts were not reflected in the statement. The Settlement Agreement was a written agreement that affected the arrearage amount because it released all obligations due before August 12, 2020. The Plan itself could also be considered a written agreement that affected the arrearage amount. A reasonable finder of fact could conclude that DCS's disclaimer language was an appropriate acknowledgement that the Settlement Agreement and the Plan altered the arrearage amount due.

Based on the record, and drawing all inferences in favor of the non-moving party, the court must deny the motion for summary judgment of liability for DCS sending statements to the Debtor.

E.  **Legal Conclusions Regarding Withholding of Debtor's Passport**

   1.  *Alleged Violations of the Automatic Stay.*

The record is insufficiently developed to provide a basis for the court to grant summary judgment establishing liability for violation of the automatic stay regarding the withholding of Debtor's passport. Debtor's only evidence regarding the passport—a single paragraph in Debtor's declaration—does not specify when DCS acted and exactly what actions it took.

It makes a difference exactly what acts DCS took regarding Debtor's passport and when it undertook those acts. If, as DCS has asserted, DCS only provided a pre-petition notice to the State Department that the Debtor owed unpaid child support, and did not take any action post-petition, then DCS did not violate the automatic stay. *Stuart v. City of Scottsdale (In re Stuart)*, 632 B.R. 531, 538-41 (9th Cir. BAP 2021) (inaction that merely maintains the status quo does not violate the automatic stay). While DCS provides no evidence regarding exactly what actions DCS took and when, neither does the Debtor. As the moving party, Debtor has the

burden of establishing that he is entitled to summary judgment because a stay violation occurred. Debtor has not met that burden.

### 2. *Alleged Violations of the Order Confirming Plan.*

Debtor argues that DCS violated the order confirming the Plan by not acting affirmatively to release the hold on the Debtor's passport. Debtor argues that the Settlement Agreement and the Plan deemed all of Debtor's obligations to support his child "satisfied" or "waived," and DCS had a duty "to trigger the release of his passport" after these obligations were extinguished.

Drawing all inferences in favor of the non-moving party, the Settlement Agreement and the Plan did not satisfy or waive all of Debtor's obligations to support his child. Although all arrearages and amounts due on or before August 12, 2020, were released under the Settlement Agreement, obligations accruing after that date were not. A reasonable finder of fact could conclude that Debtor continued to owe monthly child support obligations for the period from August 13, 2020, through the time that the child was adopted on January 28, 2021.

At oral argument, the possibility was raised that there was a short window of time, from August 13, 2020, until the next monthly child support obligation was due on September 1, 2020, where the child support obligations would have been paid in full. However, the Settlement Agreement was subject to notice and court approval under Fed. R. Bankr. P. 9019. Debtor filed a motion to approve the Settlement Agreement on August 21, 2020. No order was ever entered specifically granting that motion. But the Settlement Agreement was attached as an exhibit to the order confirming Debtor's Plan, which was entered on September 15, 2020, and the court appears to have relied on the Settlement Agreement in confirmation of the Debtor's plan. From the record, it appears that the Debtor and Ms. Drinkward each performed under the Settlement Agreement. Thus, at best for the Debtor, the Settlement Agreement was approved as part of the

order confirming Debtor's Plan—which was after the September 1, 2020, regular monthly child support obligation of $550 was due.[4]

DCS had no obligation to recognize the Settlement Agreement unless and until it was approved by the court. The balance owed by Debtor for child support never reached zero, because although the arrearage prior to August 12, 2020, may have been released, a new obligation for support after August 13, 2020, had arisen by the time the court arguably approved the Settlement Agreement. DCS had no obligation to contact the State Department of the United States to release Debtor's passport until the amount due became zero.

Based on the record, and drawing all inferences in favor of the non-moving party, the court denies the motion for summary judgment because the Debtor has not shown that DCS has violated the order confirming Debtor's Plan by taking any inappropriate action to withhold Debtor's passport.

### Conclusion

For the reasons set forth above, Debtor's motion for summary judgment is denied. The parties should be prepared to address next steps in this matter at the upcoming status hearing.

### # # #

---

[4] Debtor asserts the Settlement Agreement is effective, but DCS does not concede that point. Any dispute of fact on this issue, however, is not material to resolution of this summary judgment motion. Regardless of whether the Settlement Agreement is effective, the outcome of this motion does not change. If the Settlement Agreement were effective because the settlement was approved implicitly in the order confirming the Plan, as Debtor urges, the Debtor's motion for partial summary judgment must be denied for the reasons set forth. If the Settlement Agreement were not effective for lack of court approval, as DCS urges, then the Debtor's motion for partial summary judgment must also be denied because none of Debtor's child support obligations would have been released, and DCS would have been entitled to collect even more money than it attempted to collect.